MARSHA JONES MOUTRIE
City Attorney
JOSEPH LAWRENCE
Assistant City Attorney
JEANETTE SCHACHTNER (SBN 116671)
Chief Deputy City Attorney
BARRY A. ROSENBAUM (SBN 116940)
Senior Land Use Attorney
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile: (310) 395-6727
jeanette.schachtner@smgov.net
barry.rosenbaum@smgov.net

Attorneys for Defendants
CITY OF SANTA MONICA, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SANTA MONICA NATIVITY SCENES COMMITTEE, a California non-profit corporation,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF SANTA MONICA, et al.,<br><br>       Defendants. | CASE NO.: CV12-08657ABC (Ex)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS CONCURRENTLY FILED**<br><br>Time: 10:00 a.m.<br>Date:  December 3, 2012<br>Ctrm: 680<br><br><br>Assigned to Hon. Audrey B. Collins |

TO PLAINTIFF AND TO ITS ATTORNEY(S) OF RECORD:

    PLEASE TAKE NOTICE that on December 3, 2012[1] at 10:00 a.m., or as soon

---

[1] Because the subject Motion to Dismiss is based on many of the same legal arguments raised in Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, to preserve judicial resources the Court may wish to advance the hearing to November 19, 2012 and hear both motions at the same time.

thereafter as the matter may be heard in Courtroom 680 of the United States District Court, located at 312 N. Spring Street, Los Angeles, California 90012-4793, Defendants CITY OF SANTA MONICA, RICHARD BLOOM, GLEAM DAVIS, ROBERT HOLBROOK, KEVIN MCKEOWN, PAM O'CONNOR, TERRY O'DAY AND BOBBY SHRIVER (Collectively "CITY")  will move this Court under Federal Rule of Civil Procedure 12(b)(6) for an order to dismiss Plaintiffs' Complaint and/or Causes of Action therein, on the following grounds:

1.     Plaintiff's First Claim for Relief under the First Amendment – Free Speech Clause fails to state a claim upon which relief can be granted because it contains mere legal conclusions unsupported by any factual allegations.  Thus the First Claim for Relief should be dismissed with prejudice.

2.     Plaintiff's Second Claim for Relief under the First Amendment – Establishment Clause fails to state a claim upon which relief can be granted because it contains mere legal conclusions unsupported by any factual allegations.  Thus the Second Claim for Relief should be dismissed with prejudice.

3.     Plaintiff's Third Claim for Relief under the Fourteenth Amendment – Equal Protection Clause fails to state a claim upon which relief can be granted because it contains mere legal conclusions unsupported by any factual allegations.  Thus the Third Claim for Relief should be dismissed with prejudice.

4.     Plaintiff's First, Second and Third Claims for Relief against defendant Councilmembers BLOOM, DAVIS, HOLBROOK, MCKEOWN, O'CONNOR, O'DAY and SHRIVER (collectively "Councilmembers") in their individual and official capacities fail to state a claim upon which relief can be granted because they are entitled to legislative immunity and because the City of Santa Monica is the proper party to this litigation.  Finally, because the Councilmembers legislate as one body through majority vote, plaintiff's complaint fails to state any facts to support individual liability against them.

This Motion will be based upon this Notice, the Memorandum of Points and

1  Authorities attached hereto, the Request for Judicial Notice and attachments thereto
2  filed and served concurrently herewith, all records and pleadings in the Court file in
3  this action including but not limited to Plaintiff's Complaint; Plaintiff's Motion for
4  Preliminary Injunction; Defendants' Opposition to Motion for Preliminary Injunction
5  with its Declarations and Exhibits; Defendants' Request for Judicial Notice filed in
6  Opposition to Plaintiff's Motion for Preliminary Injunction; and upon such other and
7  further oral or documentary matters as may properly come before this Court.

8         This Motion is made following the conferences of counsel pursuant to L.R. 7-3
9  which took place on October 2, 2012, as well written communications thereafter. The
10  discussions regarding plaintiff's theory of the case and intention to file for a
11  preliminary injunction made it abundantly clear that Plaintiff will not voluntarily
12  dismiss the subject action.

13  Dated:  October 31, 2012                    Respectfully submitted,

14
15                                              MARSHA JONES MOUTRIE
                                                City Attorney
16
                                                     *Jeanette Schachtner*
17                                              BY: _____
18                                                  JEANETTE SCHACHTNER
                                                    Attorneys for Defendants
19                                                  CITY OF SANTA MONICA,
                                                    RICHARD BLOOM, GLEAM,
20                                                  DAVIS, ROBERT HOLBROOK,
21                                                  KEVIN McKEOWN, PAM
                                                    O'CONNOR, TERRY O'DAY AND
22                                                  BOBBY SHRIVER
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION AND SUMMARY OF ARGUMENT IN SUPPORT OF MOTION TO DISMISS ............................................ 1

II. STATEMENT OF FACTS ........................................................ 2

III. GENERAL STANDARD FOR DISMISSAL .............................. 6

IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF ITS FIRST AMENDMENT RIGHTS ............ 7

    A. The Subject Ordinance Is Facially Valid. ......................... 7

    B. It Is Well-Settled That The First Amendment Does Not Preclude A City From Banning All Unattended Private Displays In Its Parks ..................................................... 9

    C. The City's Prohibition On The Installation Of Unattended Private Displays Comports With This Well-Established Case Authority And Constitutes A Valid Time, Place, And Manner Regulation ........................... 11

        1. <u>The City's Ban On Unattended Structures Is Facially Neutral</u> ......................................................... 12

        2. <u>Substantial Government Interests Support The Adoption Of This Ordinance</u> ..................................... 13

        3. <u>The City's Ordinance Is Narrowly Tailored To Serve These Governmental Interests</u>. .............................. 18

        4. <u>Plaintiff Has Ample Alternative Avenues of Communication</u>. .................................................... 19

V. PLAINTIFF'S EQUAL PROTECTION AND ESTABLISHMENT CLAUSE CHALLENGES ARE SUBJECT TO DISMISSAL AS THEY BORDER ON THE FRIVOLOUS ................................................................... 20

VI. PLAINTIFF'S CLAIMS AGAINST THE CITY COUNCIL MEMBERS SHOULD BE DISMISSED ............................... 21

VII. CONCLUSION ..................................................................... 23

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## State Cases

*4805 Convoy, Inc. v. City of San Diego*,
  1183 F.3d 1108 (9th Cir. 1999)........................................................................8

*American Jewish Congress v. City of Beverly Hills*,
  90 F.3d 379 (9th Cir. 1996)..............................................................................9

*Americans United for Separation of Church and State v. City of Grand Rapids*,
  980 F.2d 1538 (6th Cir. 1992).........................................................................11

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ..................................................................................6, 7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................6

*Bogan v. Scott-Harris*,
  523 U.S. 44 (1998)...........................................................................................21

*Burson v. Freeman*,
  504 U.S. 191 (1992) ........................................................................................16

*Capitol Square Review Advisory Bd. v. Pinette*,
  515 U.S. 753 (1995) .....................................................................................9, 10

*City of Los Angeles v. Alameda Books, Inc.*,
  525 U.S. 425 (2002) ........................................................................................12

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ...................................................................................14, 18

*Congregation Lubavitch v. City of Cincinnati*,
  923 F.2d 458 (6th Cir. 1991)...........................................................................11

*Council for Life Coalition v. Reno*,
  856 F.Supp. 1422 (S.D. Cal.1994)...................................................................20

*Employment Div., Dept. of Human Resources of Oregon v. Smith*,
  494 U.S. 872 (1990) ........................................................................................20

*Figueroa v. Gates*,
  207 F.Supp.2d 1085 (C.D. Cal. 2002) ............................................................22

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998)..............................................................................8

*Griffin v. Secretary of Veterans Affairs*,
  288 F.3d 1309 (Fed. Cir. 2002).........................................................................8

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*,
  452 U.S. 640 (1981)............................................................................................9

*Hill v. Colorado,*
   530 U.S. 703 (2000) ................................................................. 16, 18

*Honolulu Weekly, Inc. v. Harris,*
   298 F.3d 1037 (9th Cir. 2002) ................................................. 12, 20

*Kaahumanu v. State of Hawaii,*
   682 F.3d 789 (9th Cir. 2012) ........................................................ 12

*Kentucky v. Graham,*
   473 U.S. 159 (1985) ...................................................................... 23

*Knights of Columbus, Council v. Town of Lexington,*
   272 F.3d 25 (1st Cir. 2001) ...................................... 10, 12, 13, 14, 18, 19

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,*
   440 U.S. 391 (1979) ...................................................................... 22

*Lemon v. Kurtzman,*
   403 U.S. 602 (1971) ...................................................................... 20

*Lubavitch Chabad House, Inc. v. City of Chicago,*
   917 F.2d 341 (7th Cir. 1990) ........................................................ 11

*Luke v. Abbot,*
   954 F.Supp. 202 (C.D. Cal 1997) ................................................. 23

*Members of the City Council of Los Angeles v. Taxpayers for Vincent,*
   466 U.S. 789 (1984) ...................................................................... 14

*Menotti v. City of Seattle,*
   409 F.3d 1113 (9th Cir. 2005) ............................................. 12, 17, 18

*Moss v. U.S. Secret Service,*
   572 F.3d 962 (9th Cir. 2009) ......................................................... 6

*National Endowment for the Arts v. Finley,*
   524 U.S. 569 (1998) ........................................................................ 8

*Newdow v. Rio Linda Union School District,*
   597 F.3d 1007 (9th Cir. 2010) ...................................................... 17

*Occupy Sacramento v. City of Sacramento,*
   ___ F.Supp.2d ___, 2012 WL 2839853 (E.D. Cal. 2012). ...................... 13

*One World One Family v. City and County of Honolulu,*
   76 F.3d 1009 (9th Cir. 1996) ................................................... 11, 14

*Plyler v. Doe,*
   457 U.S. 202 (1982) ...................................................................... 20

*Rosenbaum v. City and County of San Francisco,*
   484 F.3d 1142 (9th Cir. 2007) ...................................................... 12

*Roulette v. City of Seattle,*
   97 F.3d 300 (9th Cir. 1996) ............................................................ 8

iii

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006)...........................................................................9, 13, 18

*Supreme Court of Virginia v. Consumers Union of U.S.*,
446 U.S. 719 (1980) ...................................................................................................22

*Telemundo of Los Angeles v. City of Los Angeles*,
283 F.Supp.2d 1095 (C.D. Cal. 2003) ......................................................................16

*Tenney v. Brandhove*,
341 U.S. 367 (1951)...................................................................................................22

*Thomas v. Chicago Park District*,
534 U.S. 316 (2002) ...................................................................................................13

*Turner Broad. Sys. v. FCC*,
512 U.S. 622 (1994) ...................................................................................................12

*United States v. O'Brien*,
391 U.S. 367 (1968)...................................................................................................17

*Village of Willowbrook v .Olech*,
528 U.S. 562 (2000) ...................................................................................................20

*Vlasak v. Superior Court*,
329 F.3d 683 (9th Cir. 2003) ................................................................................8, 17

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) .............................................................................................12, 18

*Wells v. City and County of Denver*,
257 F.3d 1132 (10th Cir. 2001)....................................................................10, 19, 20

**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT IN SUPPORT OF MOTION TO DISMISS

On June 26, 2012, Defendant City of Santa Monica ("City") adopted an Ordinance which prohibits private unattended displays in the City's Landmark Palisades Park, as is the law for all other City parks. It provides:

> No person shall, in any park, erect, maintain, use or occupy any tent, lodge, shelter, structure or unattended installation or display.  The follow are exempt from this prohibition:
>
> (a) City structures and installations;
>
> (b) Other displays or installations authorized by a Community Event Permit issued by the City.
>
> Persons displaying or installing pursuant to the exemptions in subsection (b) of this Section must comply with applicable safety standards, cover any attendant costs to the City and agree to hold the City harmless as to injury or loss resulting from the installation or display.  The City Manager may adopt administrative guidelines for allocating the space available to displays and installations.  *See* City of Santa Monica's Request for Judicial Notice in Support of Motion to Dismiss ("City's RJN"), Exh. K, pp. 118-119).

In its Verified Complaint, Plaintiff claims that this law violates the First and Fourteenth Amendments and Plaintiff seeks to enjoin the City and its councilmembers from enforcing this allegedly "content-based speech restriction."  (See Plaintiff's Complaint, p. 3, ¶ 4)  However, Plaintiff's voluminous Complaint fails to allege a single material fact that could save it from dismissal, as the law in this Circuit and around the Country clearly and consistently authorizes a City to prohibit private unattended displays in its public parks.

Plaintiff's Verified Complaint and Exhibits, as well as the City's Request for Judicial Notice demonstrate that plaintiff is unable to state a viable claim for relief under the First or Fourteenth Amendments.  The City's ban on unattended displays is

a content-neutral restriction on the time, place, and manner of speech, narrowly

tailored to achieve significant governmental interests, while allowing ample

alternative avenues of communication. Since the ban's secular purposes are well-

established, Plaintiff's Establishment Clause claim is equally without merit.  Indeed,

the Complaint does not even allege that the ordinance's principal or primary effect

advances religion or fosters excessive government entanglement.  Finally, Plaintiff's

Equal Protection claim is similarly unavailing, since the Complaint fails to assert facts

which demonstrate that the Ordinance is anything but a content-neutral regulation

which applies equally to all similarly situated persons and organizations.

## II.   STATEMENT OF FACTS

### A.   Public Open Space Is Extremely Limited in the City.

The City of Santa Monica is a small, dense municipality with very limited

public space, which is heavily utilized by residents, workers, and visitors.  City's RJN,

Ex. C, pp. 29-30. Approximately 90,000 people reside in the City's less than eight

square miles; and, on weekdays, the number of people in the City at least doubles. *Id*.

The City is a popular destination for tourists and other visitors; and, on weekends, the

number of people within the City can soar to as many as 500,000. *Id*.

The City's high population density minimizes the private open space available

for residents. *Id*. The City's public open space represents only approximately eight

percent (8%) of the total land within the City. *Id*. The City's park space per capita is

significantly less than most cities and well below the national guidelines set by the

National Recreation and Parks Association. *Id*. Palisades Park, where Plaintiff wants

to place its nativity scenes, is situated atop Palisades Bluffs provides spectacular

views of the coastline.  City's RJN, Ex. L, p. 145.  Palisades Park is also situated

within the City's main business district.  Plaintiff's Verified Complaint for

Preliminary and Permanent Injunctive Relief, Declaratory Relief and Damages

("Complaint"), ¶ 13, pp. 7-8. Palisades Park is heavily utilized by both residents and

tourists alike. *Id*. Based on Palisades Park's unique aesthetic qualities, the City's

**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

Local Coastal Program Land Use Plan requires that views to, from, and along the Park be protected. City's RJN, Ex. L, pp. 193-94.

### B. Regulation of Private Unattended Displays in Palisades Park.

On June 21, 1994, the City adopted Ordinance No. 1749 (CCS), which in part established regulations governing the utilization and maintenance of City parks. City's RJN, Ex. B, pp. 18-28. The purpose of this ordinance was to ensure that public parks serve as a shared resource available to all of the community. *Id*. at p. 18. Prior to that time, the City had very few park restrictions designed to ensure general accessibility and had no standards addressing unattended displays and installations. City's RJN, Ex. A, pp. 5-6. Ordinance No. 1749 (CCS) changed this by generally prohibiting the erection of such structures. *Id*. This prohibition was consistent with other provisions of the ordinance such as prohibiting the placement of objects which would damage park grass and requiring that personal property be removed from a park when it is closed. *Id*. *See also* City's RJN, Ex. B, pp. 11-12.

On May 8, 2001, the City adopted Ordinance No. 2008 (CCS), the City's Community Events Ordinance. City's RJN, Ex. C, pp. 29-65. This ordinance governs displays and installations in the context of a community event which is defined, in relevant part, as a gathering of more than 150 people (or less if the event includes a structure requiring a building or fire permit). *Id*. at p. 37. The Community Events Ordinance and its adopted administrative regulations limit the number and duration of events.[2]

In 2003, concerns arose regarding the placement of temporary unattended displays in Palisades Park since the City had no formal standards governing these displays. Complaint, ¶ 27, pp. 12. During the prior holiday season, three groups had

---

[2] The City Manager has adopted an administrative instruction ("A.I.") that provides detailed requirements governing implementation of the Community Events Ordinance. The A.I., as well as handouts and other explanatory documents, is located on the City's website at www.santa-monica.org/ccs/events.

installed such displays. Complaint, Ex. 2; City's RJN, Ex. D, pp. 68. [3] While the City had historically treated these displays as community events, with certain displays dating back to the 1950's, the 2001 Community Events Law did not authorize their installation. *Id*. As a consequence of its review, the City adopted Ordinance No. 2095 (CCS), prohibiting unattended displays in City parks except for: (1) City-owned installations or structures, (2) unattended displays or installations in Palisades Park during the month of December in an area designated by City Council resolution ("Winter Displays"), and (3) installations authorized by a Community Events Permit. Complaint, ¶ 29, pp. 14-15; Complaint, Ex. 3; City's RJN, Ex. F, pp. 79-80. The ordinance further provided that if the Winter Displays exceeded the available designated space, display space would be allocated on a first-come, first-served basis irrespective of content and the displayer's identity. Complaint, Ex. 3; City's RJN, Ex. F, pp. 79-80. It also authorized the City Manager to develop administrative guidelines for allocating the space available for displays and installations. *Id*. On October 14, 2003, the City Council adopted Resolution Number 9898 (CCS) delineating winter display locations. *See* Complaint, ¶ 30, pp. 15-16; City's RJN, Ex. G, pp. 84-7.  The City also adopted written regulations to govern the installation of the Winter Displays. City's RJN, Ex. H, p. 88.

        In 2011, for the first time, not only did the number of requested displays exceed the available space, but multiple requests were received on the same day for the same block.  Complaint, ¶ 42, p. 20. To address the situation, the City implemented a content-neutral system for allocating display space, utilizing a random drawing.  *Id*. Applicants were allowed to request anywhere from one (1) to nine (9) spaces of the total twenty one spaces available.  Complaint, ¶¶ 38, 40, pp. 18-19; City's RJN, Ex. H,

---

[3] Many of the exhibits attached to the City's RJN are also attached to the Complaint. However, plaintiff's exhibits are not consecutively numbered in contravention of Local Rule 11-5.2. Plaintiff has also attached incomplete hearing transcripts. (Exhibit 7.) To avoid confusion and for ease of court review, the City has cited to the Plaintiff's Complaint or its Exhibits and the City's RJN.

p. 89. As a result of the number of spaces requested by the applicants, only the first four names drawn were allocated space. Complaint, ¶ 40, p. 19. Most of the spaces went to applicants who did not utilize them to celebrate religious holidays, and many used the space to advocate atheism. Complaint, ¶ 42, p. 20. The City received a large number of varied complaints about the displays. Complaint, ¶ 50, p. 30.

Because the number of applicants for display space grew so large in 2011, the City could not accommodate all those who wished to install Winter Displays without blocking much more or all of the park frontage views. *Id.* Further, operating the application and approval process for Winter Displays system was extremely time consuming for City staff due to the large number of applicants. *Id*. at p. 31. Staff had been notified that even more applicants were expected for the following year, making the administration of the program even more time consuming and costly. *Id.*

Increased impacts on the park and on staff resources, and the very real likelihood of even more applications and displays the following year, led staff to propose that the Council modify Ordinance No. 2095 to eliminate the special exception for unattended displays in Palisades Park. City's RJN, Ex. I, pp. 96-104. Extensive hearings were held in February, May and June 2012. Complaint, ¶¶ 42-50, pp. 20-31. On June 26, 2012, the City adopted Ordinance No. 2401 (the "Park Ordinance") which amended the Municipal Code to eliminate the special exception for Winter Displays in Palisades Park from the general prohibition against unattended displays in City parks.[4] Complaint, ¶ 50, p. 24; City's RJN, Ex. K, pp. 116-22. The administrative record supporting the Park Ordinance's adoption articulates the City's substantial governmental interests including, but not limited to, preserving the

---

[4] Plaintiff mischaracterizes the impact of the City's regulation from the initial page of its Complaint, Complaint, ¶ 2,p. 1. This regulation most certainly does not prohibit the display of nativity scenes in City parks. Plaintiff's Complaint later acknowledges that. *See* ¶51, pp. 31-2. It only prohibits the unattended display of nativity scenes, as with any other unattended installation or structure, without the issuance of a Community Events Permit.

aesthetic qualities of the Park, limiting damage to the Park from the displays, ensuring shared access to the City's limited public park space, protecting views to and from the Park, conforming usage of the Park to the long-standing, City-wide standards that prohibit unattended displays in parks, and conserving City resources. Complaint, Ex. 7, pp. 3-12; City's RJN, Exs. J-K, pp. 105-22.

## III.   GENERAL STANDARD FOR DISMISSAL

Rule 12(b)(6) allows a defendant to seek dismissal for failure to state a claim upon which relief can be granted.  FRCP 12(b)(6).  Such a motion tests the legal sufficiency of a claim.  In considering a motion under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept as true all material allegations in the complaint as well as reasonable inferences to be drawn from them, and determine if those facts, if proven, would establish a valid claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss, a complaint must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."" *Id.* (internal citations omitted.).  As summarized by the Ninth Circuit, in order "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its judicial experience and common

1 sense. *Iqbal*, 129 S.Ct. at 1950.  Where the facts, taken as true, are consistent with the

2 possibility of wrongdoing, but where more likely explanations also arise from those

3 same facts, the allegations do not "plausibly suggest an entitlement to relief" and are

4 appropriately subject to dismissal under Rule 12(b)(6).  *Iqbal*, 129 S.Ct. at 1350.

## IV.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF ITS FIRST AMENDMENT RIGHTS.

7 Plaintiff has failed to allege a viable claim under the First Amendment which

8 provides: "Congress shall make no law respecting an establishment of religion, or

9 prohibiting the free exercise thereof; or abridging the freedom of speech, or of the

10 press; or the right of the people peaceably to assemble, and to petition the Government

11 for a redress of grievances."  U.S. Const., Amdt. 1.

### A.   The Subject Ordinance Is Facially Valid.

13 Facial challenges like this one place much at risk.[5] Plaintiff is asking the Court

14 to invalidate an ordinance duly adopted by the City Council that balances the uses of

15 the City's limited and crowded public park space. As the legislative record shows, the

16 challenged ordinance was adopted to protect a landmark park resource for the entire

17 community, preserve the aesthetic qualities of this historic park, and eliminate a

18 significant drain on City fiscal resources in administering this program. The City

19 merely removed an exception to a law adopted in 1994. No serious argument exists

20 that the City was required to have the exception in the first place. Consequently, how

21 removing the exception becomes a constitutional claim is mystifying.

22 The nature of Plaintiff's claim counsels judicial restraint, and case law supports

23 a restrained approach. Facial challenges are rare. Indeed, in the First Amendment

24 context, these efforts are "rarely attempted, and still more rarely successful." *Roulette*

---

27 [5]In its complaint, Plaintiff fails to clearly state whether this action is a facial or
an as-applied challenge. However, given the nature of the complaint and injunctive
28 relief sought, this should be viewed as a facial challenge. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033-34 (9th Cir. 2006).

1  *v. City of Seattle*, 97 F.3d 300, 303 (9th Cir. 1996), *rehearing and rehearing en banc*

2  *den'd.* (1996). Such challenges "are generally disfavored;" and a plaintiff bringing one

3  "faces a heavy burden in advancing his claim." *National Endowment for the Arts v.*

4  *Finley*, 524 U.S. 569, 580 (1998); *Griffin v. Secretary of Veterans Affairs*, 288 F.3d

5  1309, 1317 (Fed. Cir. 2002), *cert. denied*, 537 U.S. 947 (2002). Specifically, the

6  challenger must make an initial showing described in *Vlasak v. Superior Court*, 329

7  F.3d 683, 688 (9th Cir. 2003): "To undertake a facial challenge, *Vlasak* must

8  demonstrate as a threshold matter that the ordinance by its terms, seeks to regulate

9  either 'spoken words' or 'patently expressive or communicative conduct.'"

10      Plaintiff's challenge does not fall within the narrow classes of cases in which

11  facial review is appropriate. In *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir.

12  1998), the court observed that an ordinance may be facially unconstitutional only if it

13  "is unconstitutional in every conceivable application, or if it seeks to prohibit such a

14  broad range of protected conduct that it is unconstitutionally overbroad." Plaintiff

15  does not advance the former facial challenge – that the ordinance could never be

16  applied in a valid manner. Given the nature of the regulation, it is clear that it can be

17  applied in many, many valid circumstances. Nor does Plaintiff explicitly assert the

18  latter type of facial challenge. For good reason, the Park Ordinance regulates all

19  private unattended structures and installations in public parks. Thus, even though the

20  ordinance unquestionably applies to some activities involving expression, it certainly

21  encompasses many items that are not even plausibly expressive. Even as to those that

22  are, it does not absolutely prohibit them. It merely requires that such displays be

23  attended or be permitted pursuant to the City's Community Events Ordinance.

24  Moreover, while "facial challenges under the First Amendment are permitted when

25  the legislation allegedly vests government officials with unbridled discretion and

26  when there is a lack of adequate procedural safeguards," (*4805 Convoy, Inc. v. City of*

27  *San Diego*, 1183 F.3d 1108, 1111 (9th Cir. 1999)), no such infirmity exists here since

28

1  the ordinance applies to all private unattended displays, without exception. [6]

2      Thus, this case simply does not present the type of risks to individual rights of
3  expression that would warrant this Court's stretching the rules of justiciability to
4  consider the facial validity of this regulation.

5      **B.    It Is Well-Settled That The First Amendment Does Not Preclude A**
6      **City From Banning All Unattended Private Displays In Its Parks.**

7      Even if this Court were to consider Plaintiff's complaint as presenting an as-
8  applied challenge, despite the lack of clear indication in the Plaintiff's pleadings, it
9  should find such a challenge to be similarly without legal or factual support. "The
10  First Amendment does not guarantee the right to communicate one's views at all times
11  and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna*
12  *Consciousness, Inc.*, 452 U.S. 640, 647 (1981). *Accord Capitol Square Review*
13  *Advisory Bd. v. Pinette*, 515 U.S. 753, 761 (1995); *Santa Monica Food Not Bombs v.*
14  *City of Santa Monica*, 450 F.3d 1022, 1035-36 (9th Cir. 2006). In recognition of this
15  bedrock constitutional principle which is the genesis of a city's authority to adopt
16  time, place or manner restrictions, courts have repeatedly concluded that cities can
17  constitutionally ban all unattended private displays in its parks.

18      For instance, in *American Jewish Congress v. City of Beverly Hills*, 90 F.3d
19  379, 384 (9th Cir. 1996), plaintiffs challenged Beverly Hills' decision to allow the
20  erection of Chabad of California, Inc.'s menorah in a public park contrary to the city's
21  general policy of not permitting the erection of large unattended objects on public
22  property. Chabad was the only group authorized to erect such a structure. The Court
23  found the city's approval of this display unconstitutional. Beverly Hills could not

24

25

---

26      [6] The City's Community Event Ordinance was subjected to a broad-based
constitutional challenge in 2003. Except for limited provisions unrelated to the instant
27  action, the Community Events Ordinance withstood this challenge. *See Santa Monica*
*Food Not Bombs*, *supra*, 450 F.3d 1022.  While an events permit would not be
28  available for Palisades Park given its unique characteristics, it would be available in
other City parks which are available for stationary events. Complaint ¶ 51, p. 32.

**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

allow one religious group to erect a display and deny all others without any standards. *Id*. at 384. In so ruling the Court held: "The City constitutionally could ban all unattended private displays in its parks." *Id*., *citing Capitol Square Review Advisory Bd. v. Pinette*, 515 U.S. at 783-84 (Souter, J., concurring) ("I also want to note specifically my agreement with the Court's suggestion that the State of Ohio could ban all unattended private displays in Capitol Square if it so desired.")[7]

Other courts throughout the country have reached similar conclusions. For instance, in *Knights of Columbus, Council v. Town of Lexington*, 272 F.3d 25, (1st Cir. 2001), a fraternal organization that had displayed a crèche on a historic Revolutionary War site for much of the twentieth century filed a constitutional challenge to the city's decision to ban unattended display.[8] In rejecting this challenge, the court held that city could constitutionally ban all unattended structures on this historic site since the ban constituted a content-neutral restriction on the time, place, and manner of speech that was narrowly tailored to serve a significant governmental interest and allowed reasonable alternative channels of communication). *Id*. at 31-34. *Accord Wells v. City and County of Denver*, 257 F.3d 1132 (10th Cir. 2001) (city's policy of prohibiting

---

[7] As Justice Souter further stated: "The fact that the capitol lawn had been the site of public protests and gatherings and is the location of any number of the government's own unattended displays, such as statutes, does not disable the State from closing the square to all privately owned, unattended structures. A government entity may ban posters on publicly owned utility poles to eliminate visual clutter and may bar camping as part of a demonstration in certain public parks. It may similarly adopt a content-neutral policy prohibiting private individuals and groups from erecting unattended displays in forums around public buildings" (citations omitted). The plurality and Justice Stevens also agreed with this position. *See* 515 U.S. at 761 (plurality opinion); *Id* at 803 (Stevens, J., dissenting).

[8] The factual history of *Knights of Columbus* are quite strikingly parallel to the history of the case at bar. For thirty years, the city had erected, disassembled, and stored the crèche. These activities were subsequently taken over by two fraternal organizations. *Id*. at 29. The display of the crèche had been a long source of friction. *Id*. Based on the acrimony, the time of the display was reduced to three weeks and the city began to receive requests to allow a wide range of other structures, including one exclusively containing statements of objections to the crèche. *Id*. The city understood that "it could not constitutionally pick and choose among competing applications; but granting them all would likely compromise the aesthetic and historic elements of the Green." *Id*. at 29-30.

1   unattended private displays on steps of any city building did not violate First

2   Amendment or Equal Protection Clause); *Congregation Lubavitch v. City of*

3   *Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991) (city could not constitutionally ban

4   erection of menorah in public square since it allowed various other large objects to be

5   displayed for extended periods of time; result would have been different if city "had a

6   clear policy of prohibiting unattended displays or objects"); *Lubavitch Chabad House,*

7   *Inc. v. City of Chicago*, 917 F.2d 341, 347 (7th Cir. 1990) (court rejects constitutional

8   challenge to city's refusal to allow free-standing Chanukkah menorah structure in

9   public area of the airport since there is no constitutional right to erect private

10  structures on public property; "If there were, our traditional public forums, such as our

11  public parks, would be cluttered with all manner of structures"); *Americans United for*

12  *Separation of Church and State v. City of Grand Rapids*, 980 F.2d 1538, 1554 (6th

13  Cir. 1992) (although city could not constitutionally ban menorah on public square

14  since it has allowed other individuals and groups to erect structures on the plaza for

15  extended periods of time, city could ban all unattended displays if done

16  evenhandedly).[9]

17

18      **C.    The City's Prohibition On The Installation Of Unattended Private**

19          **Displays Comports With This Well-Established Case Authority And**

20          **Constitutes A Valid Time, Place, And Manner Regulation**

21      Local laws restricting expressive activities in public forums constitute valid

22  restrictions on the time, place and manner of speech "if they are (1) content-neutral;

23  (2) are narrowly tailored to serve a significant governmental interest; and (3) leave

24  open ample alternative channels of communication." *One World One Family v. City*

25  *and County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996), *citing Ward v. Rock*

26

27  ───────────────

28      [9] The City notes that prior legal counsel for Plaintiff acknowledged the City's
    authority to ban unattended displays in his May 15, 2012 letter to the City Attorney.
    *See* Complaint, Ex. 9 [page 4 of letter].

1    *Against Racism*, 491 U.S. 781 (1989). The City's ordinance satisfies each of these

2    legal requirements.

3              1.    <u>The City's Ban On Unattended Structures Is Facially Neutral</u>.

4         "'The principal inquiry in determining content neutrality in speech cases

5    generally, and in time, place, or manner cases in particular, is whether the government

6    has adopted a regulation of speech because of disagreement with the message it

7    conveys.'" *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1159

8    (9th Cir. 2007), *citing Ward*, supra, 491 U.S. at 791. "A law that 'confer[s] benefits or

9    impose[s] burdens on speech without reference to the ideas or views expressed' is

10   normally content-neutral." *Honolulu Weekly*, *Inc. v. Harris*, 298 F.3d 1037, 1043 (9th

11   Cir. 2002), *citing Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994). Courts

12   examine the literal command of the restraint to determine whether the restraint on

13   speech is content neutral. *Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir.

14   2005), *citing City of Los Angeles v. Alameda Books, Inc.*, 525 U.S. 425, 448 (2002)

15   (Kennedy, J., concurring) ("whether a statute is content neutral or content based is

16   something that can be determined on the face of it; if the statute describes speech by

17   content then it is content based"). *Accord Kaahumanu v. State of Hawaii*, 682 F.3d

18   789, 808-09 (9th Cir. 2012) (prohibition on placement of accessories or structures on

19   beach was content neutral even though limitation may have incidental effect on use of

20   specific religious implements or physical symbols). S*ee also Knights of Columbus*,

21   272 F.3d at 31 (finding a comprehensive ban on unattended structures to be content

22   neutral as the law "does not discriminate among the types of unattended structures").

23        Here, the Park Ordinance is facially neutral. City's RJN, Ex. Q, pp. 118-19. The

24   ban is comprehensive. No person can erect, maintain, use or occupy any unattended

25   installation or display in any park. The only exceptions to these prohibitions are City

26   structures and installations or those authorized by a Community Events Permit issued

27   by the City. The plain language of the ordinance establishes content-neutrality. The

28   Park Ordinance is not directed to communicative activity or a particular type of

display. Rather, it regulates any unattended installation or display regardless of its content.[10]

    2.    Substantial Government Interests Support The Adoption Of This
          Ordinance.

The City's decision to prohibit unattended private displays or structures is supported by several significant governmental interests: ensuring that residents, workers, and visitors alike all have access to the City's limited public park space; preserving the aesthetic qualities and the historical landmark status of Palisades Park and its views of the Pacific Ocean; and eliminating the substantial administrative costs associated with administering the lottery system for the Winter Displays. These governmental interests are detailed in the administrative record before the City Council (City's Exs. P-Q, pp. 105-22; Plaintiff's Ex. 7, pp. 3-12).[11]

The City is a coastal, visitor-serving community with very crowded public spaces, including its parks. The City Council has appropriately exercised its legislative discretion to balance use of these public spaces and ensure shared usage. *See Thomas v. Chicago Park District,* 534 U.S. 316 (2002) (regulation of the use of a public forum that ensures the safety and convenience of the people is an appropriate means of preserving the opportunity for freedom of speech for all); *Santa Monica Food Not Bombs*, 450 F.3d at 1038 (City has a substantial interest in regulating competing uses

---

[10] From the initial line of its Complaint, Plaintiff strains to characterize the City's actions as being hostile to religion in an effort to demonstrate content-based animus. There is no evidence to support such an assertion. Indeed, the City's long-standing practice of approving the nativity scene display, many years with no official policy or permitting authority, and originally with fiscal and logistical support (*see* Complaint, para. 21), belies such a claim. *See Knights of Columbus*, 272 F.3d at 32 n.3 ("The Town's longstanding practice of permitting the crèche to be displayed on the Green without a permit helps, rather than hinders, the Town's argument").

[11] It is arguable that even had the City's action not been based on these substantial interests, the Park Ordinance would still be valid. Unquestionably, a city can close a park at night. *See Occupy Sacramento v. City of Sacramento*, ___ F.Supp.2d ___, 2012 WL 2839853 (E.D. Cal. 2012).And equally undisputedly, a city can prohibit leaving something overnight in a park, which otherwise would effectively transform a public park into a storage facility.

of traditional public fora). Given the City's extremely limited public park space and intensive utilization, unattended structures inhibit other shared uses. Palisades Park was the only City park in which the City Council authorized extended placement of unattended displays, and only during December. While the City chose to establish a special exception for this park, there is no legal requirement that the City revise or maintain this provision, especially when faced with the described changed circumstances. The City properly acted to bring the regulations governing Palisades Park into conformity with regulations governing all other parks in the City. This is particularly appropriate given the park's physical characteristics. It is long and very narrow, bordered by a busy arterial on one side and steep bluffs on the other.[12] City's RJN, Ex. L, pp. 145-6.

The City's aesthetic interest also fully supports this action. *See Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806-07 (1984) (city's substantial governmental interest in protecting its aesthetic appearance supported the ban of street signs on street poles); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 296 (1984) ("substantial interest in maintaining the parks . . . in an attractive and intact condition); *One World One Family Now*, 76 F.3d at 1013 (city's interest in eliminating visual blight of unsightly vendor stands easily advanced the city's substantial interest in protecting aesthetic appearance); *Knights of Columbus*, 272 F.3d at 32-33 (town's significant interest in preserving the historic and aesthetic qualities of a battle site amply justified the prohibition on unattended private displays).

The landmarked Palisades Park is renowned for its dramatically beautiful views available from, within, and to the Park; its rich and diverse landscaping, and its unique linear design. City's RJN, Ex. R, pp. 169, 193-94. The significantly increased number

---

[12] The City's action is also consistent with the City's Community Event Law which does not allow nonmoving events in Palisades Park exceeding 149 individuals because of the Park's "unique physical characteristics". Complaint, ¶51, p. 32.

of applicants, and resulting increased number of installations, led to a cluttering of Palisades Park. Complaint, Ex. 7 [pages 10-12 of Exhibit]. This in turn impacted the aesthetic qualities of this historic park and the ocean views from the park and to the park. *Id*. Given the substantial number of tourist that visit the City, in part due to its natural resources and beauty, maintaining the aesthetic quality of resources such as Palisades Park also serves to protect the City's local economy.

Finally, the City has a substantial governmental interest in reducing the significant expenditure of time and expense to operate the lottery system. Last year four staff members spent hundreds of hours administering and monitoring this process. Complaint, Ex. 7, [page 10-11]. Staff was compelled to dedicate time to the Winter Displays application process at the expense of other assigned duties related to the City's parks and open space. *Id*. Staff had never previously expended so much time and effort administering this regulatory scheme. *Id*. Staff was further informed that even more applications were to be expected in the future. Complaint, ¶ 50, p. 31. At a time when all California cities, including Santa Monica, are facing substantial budgetary constraints, the decision to eliminate such a significant expenditure of resources must be accorded great respect.

Plaintiff contends that the above-stated governmental interests do not constitute the actual basis for this legislation. Instead, as discussed, Plaintiff claims that the City has succumbed to a "heckler's veto" and to apprehension over disturbances that might occur if the City continued to operate a lottery system for unattended displays and installations. Complaint at ¶¶ 3, 54.  Plaintiff's contention lacks factual or legal support.

Plaintiff characterizes "atheist groups" (Complaint, para. 3) who installed displays pursuant to the City's prior regulatory system as "hecklers" and the City's action in adopting this ordinance as succumbing to a "heckler's veto." However, this is nothing more than a mere conclusion, which the Court need not accept as true.  In fact, it is both unprecedented and improper to characterize all other displayers in this

**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

manner since all such groups and individuals had an equal right to erect unattended

displays. Long standing case authority clearly demonstrates that these groups' reaction

to other installations did not give them any less right to erect their installations or to

express their opinions.  *See, e.g., American Jewish Congress*, 90 F.3d at 385 (city

could not prohibit the erection of Latin Cross and winter solstice because these

applications were "'simply a form of citizen protest against the submission of the

Chabad application . . . .'"). The City simply could not provide Plaintiff with the right

to erect the nativity scene to the exclusion of all others with opposing views.  The fact

that others erected installations with contrary messages to those of Plaintiff does not

make them "hecklers."[13] If it did, then anyone with an opposing view on any topic

would automatically be considered a "heckler." Such is not the law.

Additionally, the fact that the Ordinance was enacted in response to the

circumstances surrounding the 2010 and 2011 displays and installations does not

demonstrate a constitutional infirmity. Much legislation arises in response to actual

events, events that may well be heated and partisan. Indeed, the First Amendment

itself recognizes this. Imbedded in the First Amendment is also the right to petition the

government. Necessarily, citizens can petition governmental action on any number of

matters, especially ones about which there is great controversy. *See, e.g., Burson v.*

*Freeman*, 504 U.S. 191, 199 (1992) (noting that States must do more than assert a

significant state interest to legislate in the First Amendment context, it must

demonstrate, based on a factual record, that its law serves the asserted interest.)

For instance, in *Hill v. Colorado*, 530 U.S. 703 (2000), a statute which

regulated speech-related conduct within 100 feet of the entrance to any health care

---

[13] In its Motion for Preliminary Injunction, Plaintiff claims that the City could authorize unattended displays in Palisades Park for a three week period only in December, limiting the opportunity for these displays exclusively to those seeking to celebrate the seasonal holidays. With this, the City simply disagrees and so does the above-cited case authority. *See also Telemundo of Los Angeles v. City of Los Angeles*, 283 F.Supp.2d 1095, 1102 (C.D. Cal. 2003) (discriminatory access of public forums is generally violative of First Amendment).

1   facility was found to be constitutional even though it was adopted in response to the

2   action of abortion opponents at facilities performing abortions. As the Court stated:

3   "[T]he contention that a statute is 'viewpoint based' simply because its enactment was

4   motivated by the conduct of the partisans on one side of a debate is without support."

5   *Id*. at 724. *Accord Menotti*, 409 F.3d at 1129 (order prohibiting access to portions of

6   downtown during international trade conference was not infirm even though it was

7   adopted in direct response to active protests); *Vlasak*, 329 F.3d at 689 (ordinance

8   prohibiting possession of wooden objects exceeding a certain thickness during

9   demonstrations was not constitutionally suspect because it was enacted in response to

10  particular demonstrations).

11          Moreover, in advancing this claim, Plaintiff relies on statements of individual

12  councilmembers in an effort to demonstrate that the reasons for enacting the ordinance

13  were somehow inappropriate. This selective recitation of individual statements does

14  not demonstrate an alleged illicit motive. Moreover, "[t]he Supreme Court has held

15  unequivocally that it 'will not strike down an otherwise constitutional statute on the

16  basis of an alleged illicit legislative motive.'" *Menotti v. City of Seattle*, 409 F.3d

17  1113, 1130 (9th Cir. 2005), *quoting United States v. O'Brien*, 391 U.S. 367, 383

18  (1968). *Accord Newdow v. Rio Linda Union School District*, 597 F.3d 1007, 1024 (9th

19  Cir. 2010) (it is not appropriate to ignore secular reasons for statute's enactment given

20  in the statute and focus instead on statements of individual legislators; "what is

21  relevant is the legislative purpose of the statute, not the possibly religious motives of

22  the legislators who enacted the law."); *Mueller v. Allen*, 463 U.S. 388, 394-9 (1983) (

23  [The] Court is "reluctan[t] to attribute unconstitutional motives to the States,

24  particularly when a plausible secular purpose for the State's program may be

25  discerned from the face of the statute").[14]

26

27  _____

28          [14] It is also noteworthy that Plaintiff 's Complaint ignores the extensive staff
    presentation by Karen Ginsburg and the City Attorney at the beginning of the hearing.
    Plaintiff's Ex. 7, pp. 2-12 of that Exhibit. Plaintiff also minimizes the statements of
    Mayor Pro Tem Gleam Davis. *Id*. at 18-24. Moreover, Plaintiff's chosen testimony is

17

3.   The City's Ordinance Is Narrowly Tailored To Serve These Governmental Interests.

"A narrowly-tailored permitting regulation need not be the least restrictive means of furthering a locality's asserted interest." *See Santa Monica Food Not Bombs*, 450 F.3d at 1038. The City's ban on private unattended displays is narrowly tailored to serve the City's governmental interests since it is targeted precisely at the problem the City faced. The City's interests "would be achieved less effectively absent the regulation." *See Ward*, 491 U.S. at 799. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id*. at 800. *Accord Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 299 (1984) (prohibiting camping in certain parks did not violate the First Amendment even though the Government could have met its interest in preserving park lands through other means; constitutional principles do not "assign to the judiciary the authority to replace the Park Service as the manager of the Nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained"); *Knights of Columbus Council*, 272 F.3d at 32-33 (regulation prohibiting unattended displays was narrowly tailored since the ban advanced aesthetic interests that would have been achieved less

---

curious. For instance, Plaintiff emphasizes statements of Councilmember Holbrook addressing the very serious threats that staff had received as it administered this program. Surely, Plaintiff is not suggesting that it is inappropriate for the City to be cognizant of potential harm to its employees. *See Hill*, 530 U.S. at 715 (traditional exercise of police power to protect health and safety of citizens); *Menotti*, 409 F.3d at 1131 (significant governmental interest in maintaining public order). Moreover, what the testimony of the councilmembers cited by Plaintiff unquestionably demonstrates is that these councilmembers well understood that the City could not pick and choose unattended displays based on content. Expressing this understanding as they did does not undercut the City's substantial governmental interests, as detailed both by staff and by Mayor Pro Tem Davis in moving the staff recommendation, and does not support a claim that the City failed to proceed appropriately.

1   effectively absent the regulation). The City's action was in full accord with these

2   principles.

3   　　　　　　4.　　Plaintiff Has Ample Alternative Avenues of Communication.

4   　　　　While the City's ordinance reduces Plaintiff's ability to install unattended

5   nativity scenes, Plaintiff readily admits that Plaintiff remains free to disseminate their

6   views through a multitude of alternative channels. For instance, Plaintiff, or anyone

7   else, could display the nativity scenes as part of a community event in most City

8   parks, on private property, or attended in every City park (during the hours that the

9   park is open), including Palisades Park. Complaint, ¶51, pp. 31-32. Indeed, as

10  Plaintiff's Complaint acknowledges, nothing prevents plaintiff from placing a display

11  in precisely the location in Palisades Park that they are seeking the Court to authorize,

12  each and every day that the park is open and as long as the display is attended.[15] *Id*.

13  Plaintiff could also use other forms of communication such as distributing literature,

14  organizing a procession, preaching, singing, dramatizing the nativity story, or

15  displaying the nativity scenes on private property. *Id*. at 32. *See Wells*, 257 F.3d at

16  1148-49 (ban on unattended displays left many alternative avenues of communication

17  such as leafleting, demonstrating, and picketing); *Knights of Columbus*, 272 F.3d at

18  33-34 (noting plaintiffs remained free to display crèche as part of event up to 8 hours

19  or on private property, and concluding that the "Town legitimately could conclude

20  that unattended displays were more likely to present Establishment Clause issues than

21  attended ones because, for instance, a reasonable observer might be confused as to the

22  source of the message.").

23

24

25

---

26  　　　　[15] Thus, Plaintiff's conclusory allegation that their "60-year long tradition of
    expressing religious meaning of Christmas in Palisades Park" is being eradicated by
27  the City's ordinance lacks factual support.  Surely, Plaintiff could not (and does not)
    suggest that the inability to maintain a display during park closure hours (between
28  midnight and five a.m. for Palisades Park) seriously impacts the reach of Plaintiff's
    intended message.

**NOTICE OF MOTION AND MOTION TO DISMISS;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

## V. PLAINTIFF'S EQUAL PROTECTION AND ESTABLISHMENT CLAUSE CHALLENGES ARE SUBJECT TO DISMISSAL AS THEY BORDER ON THE FRIVOLOUS

Plaintiff's Equal Protection claim should be dismissed.  To establish a viable equal protection challenge, a plaintiff must establish that the plaintiff was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *Accord Honolulu Weekly, Inc.*, 298 F.3d at 1047, *quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'") Here, Plaintiff has not alleged, nor could they, that any similarly situated group or individuals has been or will be treated differently with respect to the City's prohibition of unattended displays. Thus, Plaintiff's equal protection claim must fail. *See Wells*, 272 F.3d at 1153 (no equal protection claim since no evidence that unattended display ban subjected similarly situated persons to differential treatment).

Plaintiff's Establishment Clause cause of action should also be dismissed.  A law that is generally applicable and religion-neutral does not violate the First Amendment, despite incidental effect on religious practice, unless of course if the law fails to pass rational basis review.  *See Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 890 (1990); *Wells*, 257 F.3d at 1152; *Council for Life Coalition v. Reno*, 856 F.Supp. 1422, 1430 (S.D. Cal.1994).   To withstand an Establishment Clause challenge, three standards must be met. "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one the neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).  As demonstrated above, it is beyond dispute that the subject Ordinance is generally applicable to all unattended displays and neutral toward religion.  Indeed, the face of the legislation alone amply supports this conclusion.

1  Plaintiff's strained attempts to cast the Ordinance as somehow hostile to religion are

2  simply unfounded, even under the most generous reading of its Complaint.  The

3  legislative prohibition is comprehensive and does not even mention religion. Quite

4  simply, no person can erect, maintain, use or occupy any unattended installation or

5  display in any park.  The only exceptions to these prohibitions are City structures and

6  installations or those authorized by a Community Events Permit issued by the City.

7  Additionally, even though the subject Ordinance need not be justified by a compelling

8  governmental interest to withstand an Establishment Clause challenge, the City has

9  amply demonstrated the significant governmental interests supporting this Ordinance

10  (*see supra* Section IV.C., pp. 15-17. Plaintiff has alleged no evidence that the

11  ordinance's principal or primary effect advances or inhibits religion or fosters

12  excessive government entanglement with religion. *Wells*, 257 F.3d at 1152-53.

## VI.   PLAINTIFF'S CLAIMS AGAINST THE CITY COUNCIL MEMBERS SHOULD BE DISMISSED

15  The individual Council Members should be dismissed because legislators acting

16  in their legislative sphere are entitled to absolute immunity.[16]   The principle that

17  legislators are absolutely immune from liability for their legislative activities has long

18  been recognized in Anglo-American law.  *Bogan v. Scott-Harris*, 523 U.S. 44, 49

19  (1998).  Indeed, the Supreme Court has consistently held that state and local

20  legislators are entitled to absolute immunity from civil liability or declaratory or

21  injunctive relief for their legislative actions.  *See Bogan*, 523 U.S. at 49 (holding that

_____

[16]Pursuant to local law and consistent with well recognized Council-Manager form of government, the Mayor and Mayor pro temp are legislators, just as any other member of Council.  See Santa Monica City Charter Section 604, City's RJN, Ex. M, p. 205 (providing that "City Council shall meet and shall elect one of its members as its presiding officer, who shall have the title of Mayor . . . . The Mayor shall be the official head of the City for all ceremonial purposes." And that "The City Council shall also designate one of its members as Mayor Pro Tempore. The Mayor Pro Tempore shall perform the duties of the Mayor during the Mayor's absence or disability.")  Thus, the Mayor and Mayor pro temp simply have the extra duty of running the legislative meetings (much as the Speaker of the House would in the United States Congress) but they do not exercise any executive authority.  *Id.*

1   "local legislators are likewise absolutely immune from suit under § 1983 for their

2   legislative activities"); *Lake Country Estates, Inc. v. Tahoe Regional Planning*

3   *Agency*, 440 U.S. 391 (1979) (same regarding regional legislative body); *Supreme*

4   *Court of Virginia v. Consumers Union of U.S.*, 446 U.S. 719, 732-33 (1980) (holding

5   that immunity extends to actions seeking declaratory or injunctive relief).

6       The United State Supreme Court explained in *Tenney v. Brandhove*, 341 U.S.

7   367 (1951) that "[f]reedom of speech and action in the legislature was taken as a

8   matter of course by those who severed the Colonies from the Crown and founded our

9   Nation." *Id.* at 372.  The reason for the privilege is clear.  "In order to enable and

10  encourage a representative of the public to discharge his public trust with firmness and

11  success, it is indispensably necessary, that he should enjoy the fullest liberty of

12  speech, and that he should be protected from the resentment of every one, however

13  powerful, to whom the exercise of that liberty may occasion offense." *Id.* at 372.

14      Here, Plaintiff alleges that the individual Council Members violated its

15  constitutional right by adopting Ordinance No. 2401.  *See* Complaint ¶ 10 (alleging

16  that the individual Council Members violated Plaintiff's constitutional rights by

17  "amend[ing] its ordinance removing an exemption for the allowance of private,

18  unattended winter displays in Palisades Park . . . .")  Voting to enact local law, such as

19  this Ordinance, is quintessentially a legislative action.  *See Bogan*, 523 U.S. at 45

20  ("acts of voting for the ordinance . . . were. . . quintessentially legislative")

21  Accordingly, the individual Council Members' actions, as alleged by the Plaintiff, are

22  entitled to absolute immunity.

23      Incredibly, Plaintiff also alleges that individual Council Members violated its

24  constitutional rights by being absent from a legislative meeting and thus failing to vote

25  on Ordinance No. 2401.  Complaint ¶ 10.  This incredulous allegation finds no support

26  in law or in common sense.  *See Figueroa v. Gates*, 207 F.Supp.2d 1085, 1097 (C.D.

27  Cal. 2002) ("no case has ever suggested that liability could be imposed" on a Council

28  Member's failure to vote).  The above authorities clearly demonstrate absolute

immunity for the absent Council Members.

Finally, when a government official and the government entity are named in an action under Section 1983, and the government officer is named in his or her official capacity, the official is a redundant defendant and should be dismissed.  *Luke v. Abbot*, 954 F.Supp. 202 (C.D. Cal 1997).  The proper *Monell* defendant in a civil rights case is the local government entity.  (*See Luke v. Abbot*, 954 F. Supp. 202 (C.D. Cal 1997); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985).

## VII.   CONCLUSION

For the foregoing reasons, City Defendants respectfully request that this Court grant this Motion to Dismiss.

Dated: October 31, 2012                      MARSHA JONES MOUTRIE
                                             City Attorney

                                             By: _____/s/_____
                                                     JEANETTE SCHACHTNER
                                                     Chief Deputy City Attorney